IN THE COURT OF CRIMINAL APPEALS OF TENNESSEE
AT JACKSON
Assigned on Briefs July 11, 2023

**STATE OF TENNESSEE v. DEVORIS ANTOINE NEWSON**

**Appeal from the Circuit Court for Madison County**
**No. 19-879, 19-880, 19-590      Kyle C. Atkins, Judge**

_____

**No. W2020-00611-CCA-R3-CD**

_____

Pursuant to a plea agreement, the Defendant, acting pro se, entered guilty pleas to various felony offenses and received an effective sentence of six years' imprisonment. A few weeks later, the Defendant filed a motion to withdraw his guilty pleas, claiming they were unknowing and involuntarily entered because he was not advised of the consequences of the guilty pleas.[1] Following a hearing, the trial court denied the Defendant's motion. For the first time in this appeal, the Defendant claims that his waiver of his Sixth Amendment right to counsel was not knowingly and voluntarily entered; therefore, his subsequent guilty pleas were constitutionally invalid. The Defendant additionally claims the trial court abused its discretion in denying his motion to withdraw his guilty pleas and determining that his guilty pleas were knowingly and voluntarily entered. Upon our review, we conclude that the trial court's investigation of the factors bearing upon the Defendant's knowing and intelligent waiver of his right to counsel complied with Faretta v. California, 422 U.S. 806 (1975), and Iowa v. Tovar, 541 U.S. 77 (2004). We further conclude that the Defendant failed to establish that manifest injustice required the withdrawal of his guilty pleas. Accordingly, we affirm the judgments of the trial court.

**Tenn. R. App. P. 3 Appeal as of Right; Judgments of the Circuit Court Affirmed**

CAMILLE R. MCMULLEN, P.J., delivered the opinion of the court, in which ROBERT W. WEDEMEYER and JILL BARTEE AYERS, JJ., joined.

Devoris Antoine Newson, Hartsville, Tennessee, Pro Se.

_____

[1] The Defendant provided eight grounds in support of his motion to withdraw guilty plea, some of which we deem duplicative. Accordingly, we have condensed his issue for clarity.

- 1 -

Jonathan Skrmetti, Attorney General and Reporter; Richard D. Douglas, Senior Assistant Attorney General; Jody S. Pickens, District Attorney General; and Benjamin C. Mayo, Assistant District Attorney General, for the Appellee, State of Tennessee.


# OPINION

**Procedural History.** The Defendant entered guilty pleas to a set of three cases charging multiple offenses based on the following factual summaries:

In case number 19-509, on April 26, 2019, while an inmate in jail, the Defendant was involved in inciting a riot during which he threw a mop bucket and struck one detention specialist and punched another detention specialist in the face causing injury to both individuals.

In case number 19-879, on April 22, 2019, the Defendant was initially dropped off by car at his uncle's home, brandished a weapon at him, and demanded that his uncle go inside of his home to retrieve his Mason books. After a verbal altercation, his uncle complied. The Defendant then left, went to his sister's home, and entered without invitation. The Defendant brandished a firearm at his sister, her boyfriend, and their two minor children. When the Defendant refused to leave, his sister's boyfriend grabbed the two minor children and put them in his girlfriend's car. The Defendant followed him out to the car and struck him with the firearm in the head, causing multiple injuries. The boyfriend escaped from the Defendant and fled in another car which had two other individuals inside. The Defendant shot six times at that car and struck the left rear side with a bullet while the car was being driven away. The Defendant then got into his sister's car, which had her two minor children inside, and attempted to drive away with them. However, the Defendant's sister jumped through the passenger side window, engaged in a physical struggle with the Defendant, and managed to pull the keys out of the ignition, causing the car to stop. The Defendant exited the car and fled the scene.

In case number 19-880, on March 31, 2019, at approximately "3:09" a deputy ran the tag number of a car that he observed pull into another lane of traffic immediately after the deputy had pulled behind it. While the deputy was waiting for the tag information to return, he observed the characteristics of the driver, who was later identified as the Defendant. The information for the tag number showed that the car was registered as stolen out of Dallas-Fort[] Worth airport in Texas. As the deputy attempted to initiate a traffic stop, the car accelerated to a high rate of speed and the deputy lost sight of it. At approximately "4:49" on the same day, another deputy observed the same car parked at a residence. The Defendant was present at the residence, and a firearm was located inside

the residence. Following a search of the car, a debit card with the Defendant's name on it and two boxes of ammunition were located inside.

Prior to entry of the Defendant's guilty pleas, on June 3, 2019, a Madison County Grand Jury returned an indictment against the Defendant in case number 19-509, charging him with three counts of assault, and on June 17, 2019, the Defendant filed his first motion, acting pro se, seeking to dismiss the proceedings in case numbers "19-509[,]" "19CR848[,]" and "19CR898." The motion alleged, among other things, that the "pro-se defendant has asserted his rights as a sovereign citizen since incarceration on April 23, 2019 and has not signed any contracts to engage . . . with the corporation of Tennessee[.]" In support, the motion asserted conclusory violations of the Fourth, Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

On July 8, 2019, the Defendant was arraigned under case numbers 19-590 and 19-591. It is significant to note at this juncture that case numbers 19-591 and 19-879 are effectively the same. The State's omnibus motion in response to the "Defendant's Pretrial Motions, Affidavits, and Pleadings As Numbered by the Court 1-53" provides

> [In] case number 19-879, a preliminary hearing was held on May 9, 2019, and the cause was bound over for action by the grand jury. Bond was set by the general sessions court at $350,000, which remained as set when the court bound the case over to the grand jury. The Madison County Grand Jury indicted the Defendant on July 1, 2019, in case number 19-591, and subsequently re-indicted the Defendant on October 28, 2019, *based on the same factual incidents as alleged in the original indictment in case number 19-591.* Orders of Nolle Prosequi and Transfer of Record from 19-591 to 19-879 have been entered by the court.

(Emphasis Added).

A notation on the indictment also reflects that case number 19-879 is a "re-indictment of 19-591[.] No capias[,]" and the January 23, 2020 order from the trial court addressing the Defendant's "Motion #26" provides:

> With regard to docket number 19-879, the Defendant was given a preliminary hearing on this matter on the charges of four (4) aggravated assaults. The matter was then bound over to the Grand Jury. The Grand Jury indicted on counts 1-12 of the indictment in docket number 19-879. Although the charges changed, the underlying facts remained the same. The Defendant had the opportunity to hear and cross-examine witnesses at the

- 3 -

preliminary hearing. The Defendant is not entitled to a new preliminary hearing just because the indicted charges changed.

Accordingly, to the extent that case number 19-591 has any effect in this appeal, we will treat it as the number for the arrest warrant in case number 19-879.

At the top of the July 8, 2019 arraignment hearing, the trial court asked the Defendant to state his name. The Defendant replied, "Um, you want my divine name or my earthly name?" When the court replied, "Just your name[,]" the Defendant said, "Devoris Newson." After explaining to the Defendant that he had a right to plead not guilty, the right not to incriminate himself or give evidence against himself, the right to effective assistance of counsel and that an attorney would be appointed to him if he could not afford one, and the right to confront any witnesses against him and compel witnesses to testify for him, the Defendant said he understood those rights. The court asked if the Defendant was going to be able to hire an attorney, and the Defendant explained, in over four pages of the transcript, the problems he perceived with his case. In doing so, the Defendant apprised the trial court that he had previously represented himself. He said:

I wrote over 50 grievances. I have explained to them that I'm a separate exhibit litigant. I went to two universities for criminal law. Um, I went to Central States of criminal law, I went to, uh, Phoenix University for criminal law. Uh, I fought numerous cases in the past. I've beat over 70 felonies in the court of law. I just beat 26 felonies l[]ast year in Junction City, Kansas. I filed a 40 million[-]dollar lawsuit against Junction City, Kansas, in which they wanted to play ball after that.

After explaining to the Defendant that he would have an opportunity to address any motions or concerns about his case on another day and that the court needed to know if the Defendant was going to hire a lawyer, the Defendant replied:

Uh, well, Your Honor, I don't, uh-- The general is[,] uh, well, let me just answer your question about me. It's not about me hiring an attorney. . . I feel . . . I might be the best lawyer in Jackson, Tennessee, given a[n] opportunity. I feel like . . . I'm ambitious. I'm willing to work as hard as any attorney.

When the court asked if the Defendant was seeking appointed counsel, the Defendant replied, "No, not at all, Your Honor." When the court asked if the Defendant was seeking to represent himself, the Defendant replied, "Absolutely, sir."

- 4 -

The court detailed the charges against the Defendant in case 19-590, for the offense of retaliation for past action by harming or threatening to harm a witness in retaliation for something the witness did in an official capacity,[2] ensured the Defendant had seen a copy of the indictment and understood the nature of the charges against him, then entered a plea of not guilty on the Defendant's behalf. The court then asked, "And you're telling me you don't want me to appoint a lawyer?" The following exchange occurred:

> THE DEFENDANT: Yes, Your Honor.
>
> THE COURT: Are you planning to hire a lawyer?
>
> THE DEFENDANT: Well, . . . I'm talking in a discussion with a civil rights lawyer out of Nashville, Tennessee, right now, but not as a criminal lawyer. I can represent myself in a criminal case.
>
> THE COURT: All right. Okay. So[,] you're planning to represent yourself in . . . 19-590?
>
> THE DEFENDANT: Yes, Your Honor.

The court then detailed the charges in case number 19-591. When the court asked if the Defendant understood the charges in this case, the Defendant replied, "Yes, Your Honor. They're some bad magicians, but I understand." The court asked if the Defendant was able to hire counsel, and the Defendant replied:

> THE DEFENDANT: I would definitely, uh[,] be my pleasure to, uh, make a mockery out of the District Attorney with this case. The[n] meet him one-on-one in court and actually go to war with him in criminal litigation.
>
> THE COURT: Okay. So[,] you're telling me you're not going to hire a lawyer?
>
> THE DEFENDANT: I'm the best lawyer in Jackson, Your Honor.
>
> THE COURT: Are you asking me to appoint the Public Defender's office to represent you?

---

[2] Case number 19-590 was subsequently dismissed pursuant to the plea agreement as noted during the guilty plea colloquy.

THE DEFENDANT:  No, Your Honor.

After explaining the potential punishment for each of the offenses for which the Defendant was charged, the trial court engaged in the following discussion with the Defendant:

THE COURT:  All right.  Do you realize that if you're found guilty on one or more of these crimes I can order those sentences to be consecutive, especially like the 19-590 and 19-591 and 505, whatever the first case was, I can order those all to be consecutive?

THE DEFENDANT:  Yes, Your Honor.  But you already know what they teach us master masis [sic].

THE COURT:  And do you understand that if you represent yourself, you're going to be on your own.  Do you understand that?

THE DEFENDANT:  Yes.

THE COURT:  Look –

THE DEFENDANT:  I got you, I got you, Your Honor.

THE COURT:  I know –

THE DEFENDANT:  I got it.

THE COURT:  -- these seem like silly questions –

THE DEFENDANT:  All right.

THE COURT:  -- but I've got to ask them.  Okay?

THE DEFENDANT:  Yes.

THE COURT:  So[,] do you understand that once you're on your own, I can't tell you how to try your case.  I can't give you advice about how to try your case.  Not that you would even want it, but I can't do that for you.  Do you understand that?

THE DEFENDANT:  Yes, sir.

THE COURT: . . . Are you familiar with the Tennessee Rules of Evidence?

THE DEFENDANT: Yes, sir. . . . [Y]ou have all of that on the kiosk. You just let me get to it, I'll run down for hours a day.

THE COURT: All right. Do you understand that the Tennessee Rules of Evidence govern how evidence is admitted in this courtroom?

THE DEFENDANT: Yes, Your Honor.

THE COURT: And you understand that I'm going to have to hold you to those Rules of Evidence and I'm not [going] to be able to make objections for you, et cetera?

THE DEFENDANT: As long as you give the . . . DA the same treatment, I'm all right with that.

THE COURT: No, I'm going to treat you the same as – That's the whole point. I'm going to treat you as the Rules of Evidence go the same way I treat the DA.

THE DEFENDANT: All right.

THE COURT: But you understand that I'm not going to be able to object to evidence that the state introduces?

THE DEFENDANT: Yes.

THE COURT: And if you don't object to it –

THE DEFENDANT: Yes.

THE COURT: . . .[Y]ou'll just be out of luck. Not my choice.

THE DEFENDANT: Well, they call me the new[-]age Johnnie Cochran, Your Honor. I think I can handle it.

THE COURT: Sounds like a winner. All right. Are you familiar with the Rules of Criminal Procedure?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. You realize those rules are going to govern how this case proceeds?

THE DEFENDANT: Yes.

THE COURT: And you realize that I'm not going to be able to advise you about the Rules and how to explain them to you, and that it's just going to be up to you to do that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. You realize that if you take the witness stand you're not just going to be able to start talking [on] end?

THE DEFENDANT: Yes, Your Honor.

THE COURT: You're going to have to question yourself. So[,] you're going to have say things like: "State your name--"

THE DEFENDANT: Yes, Your Honor[.]

THE COURT: -- and then you'll have to your name. . . . You're not just going to be able to give a rambling coliloquy [sic] about what happened. Do you understand that?

THE DEFENDANT: Is it coliloquy or soliloquy?

THE COURT: Well, I don't really know, but I like coliloquy better because it came to mind first.

THE DEFENDANT: Yes, sir. I won't challenge you. You're the judge.

 . . . .

THE COURT: So, in other words, you're not just going to be able to give a personal statement. You're going to have to do things in question and answer form.

THE DEFENDANT:  Yes, sir.

THE COURT:  Okay.  All right.  Here's what I'm going to tell you.

THE DEFENDANT:  All right.

THE COURT:  And I'm not knocking your ability to try a case or be familiar with the Rules of Evidence.  And I don't know the answers to those questions any more than what you've just represented to me.  But I do know one thing.

THE DEFENDANT:  Yes.

THE COURT:  I've never seen it work out very well.

THE DEFENDANT:  Yes.

THE COURT:  So –

THE DEFENDANT:  I don't think I have –

THE COURT:  -- having said that –

THE DEFENDANT:  Yes.

THE COURT:  -- it's my opinion and it's my duty to advise you that I think you would be far better off to have a trained, licensed lawyer represent you in this matter.

THE DEFENDANT:  Criminal law teaches us, Your Honor, in, uh, school that the worst thing you can do -- and I believe they taught you that as well -- is take a public defender.  You fall on the bottom of the cake layer.  They also tell you if you're not high media profile, if you don't have money or if you don't have access to things of wealth, th[e]n you will not get due process.  These lawyers that you have as public defenders -- and which I'm aware of this guy right here.  I've seen plenty of his cases, and, uh, the -- the inmates come to me with their cases with people like his name on it and I'm like, "Well, how are you still in court?  Why is this case being produced?"  And I could give you my honest answer, that . . . the majority of your

- 9 -

public defenders are corrupt. And I just had to fire six public defenders last year because every time I would set up a trap for them[.] And this is what I would do, Your Honor. I would ask them a question I already know the answer to. So when they lie to me, I already knew they were dirty. So I have would to go through these trials and tribulations of filing complaints with the cannon [sic] bar. Then I would have to go th[r]ough firing the attorney, all the way to the point where I got to six of them where they couldn't give me any more attorneys in the county or anything else.

THE COURT: Okay.

THE DEFENDANT: All right.

THE COURT: All right. Do you understand – I'm just advising you I think you're better off. You don't have to agree with me. You don't have to tell me why you don't agree with me. It's my opinion that although you've said some things here that seem to have some basis in the law, my guess is you're not totally familiar with the law, you're not totally familiar with the court procedure, and you're not familiar with the Rules of Evidence. And I would strongly urge you not to represent yourself. I just want to make sure . . . you understand that that's my opinion. You don't have to agree with me. Very few people do. So –

THE DEFENDANT: Yes.

THE COURT: -- do you –

THE DEFENDANT: Yes, Your Honor.

THE COURT: -- understand that's my opinion?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right. In light of the penalty you suffer for these charges, . . . you possibly face, in light of my admonition that I don't think it's the best idea for you –

THE DEFENDANT: Well, having an attorney –

THE COURT: -- let me ask you –

THE DEFENDANT: -- is a privilege, Your Honor.

THE COURT: Let me ask you this. Do you still want to go forward and represent yourself?

THE DEFENDANT: Absolutely. I'm a[n] apprentice or a master mason on the third degree, Your Honor.

THE COURT: All right.

THE DEFENDANT: I think I can handle anything they take . . . at me. I don't think the lie could stand on truth.

THE COURT: Okay.

THE DEFENDANT: I want to give you, Your Honor, justice, just I seen, you know, so -- ,

THE COURT: All right.

THE DEFENDANT: -- as long as –

THE COURT: . . . Is this decision you're making entirely voluntary on your part?

THE DEFENDANT: Absolutely.

THE COURT: All right. I'm going to find that [the Defendant] has knowingly and voluntarily waived his right to counsel against my advice, therefore I will permit him to represent himself. Do you want me to appoint any type of standby counsel or elbow counsel to assist you or not? Or do you think you just want to go solo?

THE DEFENDANT: Uh, would that hinder my research?

THE COURT: They're not going to be in -- No.

- 11 -

THE DEFENDANT: Okay. Yeah. Well, I've had standby. You know, standby is the guy who does the negotiations at the end of the day when it's time for us to go.

THE COURT: He's not going to negotiate for you. All he's going to do is he'll be sitting there . . . in court, and that's it, just on the day of trial.

THE DEFENDANT: Well, give me [a] good one . . . for the news channel. They always come in on court day. I don't want a bad one. Make him look good.

The Defendant was appointed first elbow counsel on the same day. On July 23, 2019, the Defendant filed a motion for all "preliminary/court proceeding transcripts," a "motion to recuse [the trial judge] from all proceedings/court cases[,]" a "motion to dismiss preliminary proceedings," and a "motion to dismiss all court proceedings[.]" On August 12, 2019, the Defendant filed a pleading entitled, "Stop Willie Lychen Me Affidavit[,]" claiming, among other things, yet again that he was a sovereign citizen, conclusory violations of the federal constitution, and that the trial judge violated his First Amendment rights by not allowing the public to view his court settings.

In response to the State's petition to have the Defendant mentally evaluated, on August 16, 2019, the trial court issued an order to have the Defendant evaluated on an out-patient basis by Pathways Behavioral Health Services pursuant to Tennessee Code Annotated section 33-7-301. This spurred the Defendant to file a response, on August 22, 2019, contesting the grounds for the petition. Amongst the offensive and disparaging remarks the Defendant made about the assistant district attorney, this motion alleged various other lawsuits the Defendant had filed, claimed he was "well known throughout multiple states for being a political problem for District Attorney's . . . [and] going federal with his issues with local state officials," and threatened to sue the assistant district attorney. On October 2, 2019, the trial court received a letter from Pathways Behavioral Health Services concluding that, upon completion of the competency evaluation, the Defendant "has at least present ability to consult with his attorney with a reasonable degree of rational understanding and a rational as well as factual understanding of the proceedings against him." The letter further provided the medical physician's opinion that "at the time of the commission of the acts constituting the offense[s] [in this case], [the Defendant] was able to appreciate the nature or wrongfulness of such acts."

On September 9, 2019, the Defendant filed "Defense Response to State's Response For All Preliminary Court Proceedings Transcripts," which noted that "[d]efense 'elbow' counsel is worthless[.]" Defendant complained that he had not seen elbow counsel since

- 12 -

August 12, 2019, and that he had previously filed a bar complaint against him and therefore a conflict of interest existed. On the same day, the Defendant filed a motion to reconsider or an amended motion to recuse the trial judge alleging he was corrupt, racist, and biased, a motion for full discovery, a motion to disclose grand jury material, a motion to set bail, and a motion for access to recording of preliminary hearing. Over the next several days, the Defendant filed seven pre-trial motions including a motion for extension of deadline for all pretrial motions, a motion for speedy trial or in the alternative dismissal, and a motion for "new standby counsel." From October 28, 2019 to January 16, 2020, the Defendant filed approximately twenty-six additional motions.

On October 28, 2019, the State filed its notice of criminal convictions and intent to seek enhanced punishment listing the Defendant's criminal history to consist of three felony convictions of "felony flee and elude," forgery, and "felony interference with law enforcement." The Defendant also had misdemeanor convictions of resisting arrest by public officer, criminal trespass (two), disorderly conduct, criminal damage to property, failure to produce driver's license on demand, and reckless driving. The notice also listed pending felony charges against the Defendant out of El Paso, Texas, including aggravated kidnapping and aggravated sexual assault for which the Defendant had entered a guilty plea to aggravated kidnapping and was placed on deferred probation on January 15, 2015. The aggravated sexual assault was dismissed. The Defendant's probation had been revoked on April 30, 2019, and an order extending supervision was entered on July 20, 2018. The Defendant also had additional charges from El Paso, Texas of assault on a family/house by impeding breathing or circulation (felony), evading arrest (misdemeanor), and failure to "ID Fugitive/Intent to give false information" (misdemeanor), all for which the Defendant had four outstanding warrants for his arrest. In response, the Defendant filed an extensive motion to strike the State's notice of intent to seek enhanced punishment arguing, among other things, that the notice did not comply with various statutes because it was not properly filed with the clerk's office and did not contain the signature of the District Attorney as required by statute.

Two written waivers of the right to counsel listing case numbers 19-879 and 19-880 were signed by the Defendant and filed on November 5, 2019. On December 17, 2019, first elbow counsel moved to withdraw from representing the Defendant, acknowledged his status as elbow counsel, but noted that the Defendant had filed a civil lawsuit against him. The next day, the trial court issued an order relieving first elbow counsel and appointing second elbow counsel.

Pursuant to a plea agreement, on February 12, 2020, the Defendant, acting pro se, entered guilty pleas in case numbers 19-509, 19-879, and 19-880. Second elbow counsel assisted in preparing the Defendant for the guilty plea, and second elbow counsel was also present at and responded to questions during the guilty plea hearing. After the State

provided the factual basis in support of case number 19-879, the following colloquy, in relevant part, occurred:

THE COURT: All right. Mr. Newson, did you hear the District Attorney recite the facts in 19-879?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Are they at least substantially correct?

THE DEFENDANT: Yes, Your Honor.

THE COURT: In 19-879, Count 1, you're pleading guilty to aggravated burglary. . . . **In Count 2, 3 -- yeah, 2, 3, 4, and 5 will merge into a single count and you'll plead guilty to aggravated assault. In each of those you'll receive a sentence of 6 years at 30 percent with no fine. Is that what you understood?**

THE DEFENDANT: Yes, Your Honor.

THE COURT: Counts 6 and 7 will be nolle prossed. Again, they can be rebrought by the District Attorney within the statute of limitations. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: In Count 8 you're pleading guilty to felony reckless endangerment. In Count 12 you're pleading guilty to possession of a handgun with a prior felony. In each of those you'll receive a sentence of 2 years at 30 percent with no fine. Is that what you understood?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Counts 9 and 10 will be nolle prossed. Again, . . . - they can be refiled within the proper statute of limitations. Is that what you understood?

THE DEFENDANT: Yes, Your Honor.

THE COURT: Count 11 you're pleading guilty to theft over 2,500. You'll receive a sentence of 4 years, 30 percent, with no fine. Is that what you understood?

THE DEFENDANT: Yes, Your Honor.

THE COURT: These counts are concurrent and they're also concurrent with 19-509 and 19-880. And it's a sentence to serve. No work release, no post-plea expungement, no DNA testing. You're telling the Court you're a U.S. citizen. You're to have no contact with the victim or witness. Is that your understanding of the plea in 19-879?

THE DEFENDANT: Did you say no post release? What's that?

THE COURT: No what?

THE DEFENDANT: You said no post release?

THE COURT: No post-plea expungement.

THE DEFENDANT: Okay. I'm sorry. Okay, okay, okay, okay, okay.

. . . .

THE COURT: And some of these – Let's back that up. On this – I'm not sure about these counts. Some of them may be eligible for expungement.

THE DEFENDANT: Yes.

THE COURT: But some of them are not.

THE DEFENDANT: Okay.

THE COURT: And it will all depend on your prior record, which I don't have knowledge of.

THE DEFENDANT: All right.

- 15 -

THE COURT:  All right?

[STATE]:  Two things.  With regard to what the [c]ourt just said, I don't disagree.  It's not part of this agreement.  These are not diverted, there's no agreement that these will be expunged.

THE COURT:  Right.

[STATE]:  And then I think[,] and may have misheard the [c]ourt, but I think the [c]ourt[,] . . . you said no DNA testing, but there will be DNA testing required. . . .

THE COURT:  Thank you.  You will have to undergo DNA testing.  Do you understand that?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  . . . [Are those] the pleas you negotiated with the District Attorney?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Have you got any questions about it?

THE DEFENDANT:  No, Your Honor.

THE COURT:  Do you feel like you understand it fully?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  Do you want me to accept your plea in 19-879?

THE DEFENDANT:  Yes, Your Honor.

THE COURT:  The Court will find that Mr. Newson's plea of guilty has been freely, voluntarily, and intelligently made; there's a factual basis for the plea; and that Mr. Newson is representing himself.  And he's also had elbow counsel to ask questions of.  So[,] the Court will accept his plea in 19-879. Count 1, I'll find him guilty of burglary. **I'll merge Counts 2, 3, 4, and 5 into one count of aggravated assault and sentence him to 6 years at 30 percent with no fine in**

**both Counts 1 and the merged Count 2.** Counts 6, 7, 9, and 10 will be nolle prossed. Count 8 I'll find him guilty of felony reckless endangerment. Count 12 I'll find him guilty of possession of a handgun with a prior felony conviction in each of those counts I'll sentence him to 2 years at 30 percent with no fine. Then in Count 11 I'll find him guilty of theft over 2,500 dollars, sentence him to 4 years at 30 percent with no fine. These counts are concurrent with each other and concurrent with 19-509 and 19-880. The remaining terms and conditions will be made a part of the plea. You're hereby sentenced on 19-879. All right. Let's back up to 19-509 real quick, Mr. Newson. . . . So that's also a sentence to serve that is concurrent. None of that's on this plea form. These assaults may or may not be eligible for post-plea expungement if you file for it, but the DA's not agreeing to it. Do you understand that?

THE DEFENDANT: Yes, Your Honor.

THE COURT: All right.

[STATE]: Your Honor, . . . I could have filled out every one of the – I did indicate on just one of -- the first one, 19-879, and I'm intending that to apply to each one of these. . . . It's just too much to fill out on one page, so --

THE COURT: Correct. Did you understand that, Mr. Newson?

THE DEFENDANT: Yes, Your Honor.

THE COURT: So, in other words, 19 -- which – what's the number?

[SECOND ELBOW COUNSEL]: 879.

[STATE]: 879.

THE COURT: 879, the second page of that where it says all counts are concurrent[,] and you're sentenced to TDOC, work release, post-plea expungement, you'll undergo DNA testing, you're a U.S. citizen, no contact with any victim or witness, those conditions apply to 19-509, 19-880. Is that what you understand?

THE DEFENDANT: Yes, Your Honor.

- 17 -

(Emphasis Added).

On February 20, 2020, the Defendant filed a motion to withdraw his guilty pleas claiming that (1) he was innocent; (2) he was not advised of the consequences of the guilty pleas; (3) he entered the guilty pleas under duress; and (4) he did not read the plea agreement and plea negotiations were done "through third party voluntary services." On February 25, 2020, the State filed its motion in response to the Defendant's motion to withdraw guilty pleas arguing that the Defendant's guilty pleas were knowingly and voluntarily entered and that there was no manifest injustice requiring correction. On March 13, 2020, the Defendant filed an amended motion to withdraw his guilty pleas claiming that the State failed to inform him that it was going to seek a continuance until two days after entry of his guilty pleas. Had he known the State was going to seek a continuance of the trial, the Defendant alleged "the proceedings would have been different had this evidence been disclosed prior to plea negotiations." The Defendant also claimed the trial court's rulings were based on "an erroneous assessment of the proof[.]" The Defendant subsequently filed at least two amended motions to withdraw his guilty pleas. On March 30, 2020, the Defendant filed a motion entitled "Motion for Counsel/Representation for Motion to Withdraw Guilt Plea Hearing" requesting the court to appoint counsel to address Defendant's motion to withdraw guilty pleas. On May 4, 2020, the Defendant filed a second amended motion to withdraw his guilty pleas, once again disputing the factual basis in support of his guilty pleas and asserting his innocence.

On September 7, 2021, the trial court conducted a hearing on the Defendant's motion to withdraw his guilty pleas. The Defendant, with his now third elbow counsel present and participating, testified that he wanted third elbow counsel to "handle the proceedings[,]" and the case going forward. He agreed that he no longer wished to represent himself. The Defendant testified that at the time of his guilty pleas, he was acting pro se. He said that second elbow counsel negotiated with the District Attorney's Office in reaching a plea deal. He said he was unaware of any plea until he came to court on the day of trial and "they ran up on [him] with the offer[.]" The primary issue in the motion to withdraw the guilty pleas was that the plea agreement was different than what was reflected in the judgments. Even though he was charged with four counts of aggravated assault, the Defendant believed he was pleading guilty to a "package deal to consist of one count of agg[ravated] assault[.]" The Defendant explained that when he entered the guilty plea in case number 19-897, the judge stated that he had pled guilty to a single count of aggravated assault; however, when the judgments were entered they reflected four separate counts of aggravated assault. He acknowledged the convictions were ordered to be served concurrently. The transcript from the guilty plea hearing was admitted as an exhibit to the hearing. The Defendant stated the additional convictions of aggravated assault "raised [his] security level, which put [him] in some pretty rough situations." Had he known he

was pleading guilty to four counts of aggravated assault rather than a single count of aggravated assault, the Defendant would not have entered the entire guilty plea.

The Defendant also said that the judge did not explain the consequences of breaching his plea agreement. The plea agreement required the Defendant to have no contact with the victim, and the Defendant was unclear if that prohibited him from subpoenaing the records from the car rental company in Texas to prove that the car from case number 19-880 was in fact a rental at the time he was arrested. The Defendant felt the records would establish that he had been "set up." The Defendant believed he did not knowingly and voluntarily enter his guilty pleas because he did not "understand the effects of the entire plea package[.]" The Defendant was also aggrieved by the fact that he was re-indicted after the case was dismissed [at the April 18 preliminary hearing]. The Defendant also believed the State had withheld certain unspecified discovery he claimed was "Brady material." Because he never received the alleged material, the Defendant believed his guilty plea was not knowing and voluntarily entered. The Defendant said he entered the guilty pleas because it was in his "best interest" and because he "didn't know the law like [he] should." He said he was never advised of the elements of the offenses but only the charges.

In denying the Defendant's motion to withdraw his guilty pleas, the trial court stated as follows:

> THE COURT: All right. First off . . . Mr. Newson has filed a Motion to Withdraw his Guilty Plea to Correct a Manifest Injustice. I haven't heard any testimony about what this manifest injustice was. He's made a lot of comments about videos and statements and reports and fingerprints, but I don't see any of that stuff. I haven't heard . . . anything about what that is, what it might contain, how it might help him. I mean, it's just all talk. There's nothing of substance in any of it.
>
> As far as the Brady material, he, again, hasn't shown how it would make a difference in his prosecution of the case, which is not really an issue once you get to this stage. Mr. Newson had access to that all that, could have gotten that, could have had an attorney help him with it. I tried multiple times to get him to accept an attorney who could get that information for him.
>
> In fact, I think I appointed him three . . . elbow --different counsels at some point or another and he just wasn't going to have it . . . I mean, first off. And second is, I'm just going to find he's not credible. He

- 19 -

told us today that he's never handled a criminal case. And . . . I asked him about this and I went through it very long; a long, lengthy hearing with him. He said he's written over fifty grievances. He went to two universities for criminal law. He's fought numerous cases. He's beat over seventy felonies in the court of law.

Felonies are criminal cases, so he either lied to me then or he lied to me today. So[,] in either case, I find him not credible. He beat twenty-six felonies last year in Junction City, Kansas. So, . . . he had all that information. I tried my best to get him to take a lawyer. He received a plea deal in exchange for leniency on other cases. I just don't remember off the top of my head what the highest charge was he had, that it was reduced from. If this was my only case I might could remember, but it's not.

. . . .

A felony. So[,] he had an A felony reduced down to a C felony, and he gave up -- He can't come back at this point without any proof of what the manifest injustice is, what proof of any . . . things that were withheld from him. He talks about it being withheld from him and then he's talking about it all happening before he even entered his guilty plea.
. . . .

So [,] . . . I will say this. When I went through the guilty plea with him, I went through it very thoroughly with him. I explained to him how he had a right to go forward with his not guilty plea. In fact, I think we were ready to go either that day or the next day or soon. We were ready to try it. And I asked him this specific question: "Do you understand by pleading guilty you're admitting you committed the crimes to which you're pleading and this will forever close this matter as far as guilt or innocence is concerned?" And he said yes.

And then, more importantly, we went through a detailed factual analysis in each of the cases he pled to with each count and he admitted that those facts were at least substantially correct. It would have dealt with the four separate aggravated assaults with four separate victims.

His comments this morning about not knowing what the elements were, that was his job as the lawyer. That's his responsibility he assumed, that I tried my best to get him not to assume. I just hadn't heard anything this morning that creates a manifest injustice that would necessitate or require, in any way whatsoever, allowing him to [withdraw.] This is simply buyer's remorse and I'm going to deny his motion.

It is from this judgment for case numbers 19-590, 19-879, and 19-880 that the Defendant now appeals.

## ANALYSIS

**Waiver of Right to Counsel.** The Defendant, acting pro se yet again, filed the appellate brief in this case. We note at the outset that the Appellant's twenty-seven-page, handwritten brief is difficult to decipher as it is in cursive writing, single spaced, and on notebook paper. Some of the pages have notations on the back of the page and are torn at the top. The Defendant asserts throughout his brief that the trial court violated his Sixth Amendment right to counsel at his arraignment and at the guilty plea. The Defendant does not expressly state how the trial court violated his Sixth Amendment right to counsel. Instead, he claims he "was not asked but ordered to sign the waiver on [November 4, 2019]." The Defendant further claims the trial court erred in determining he waived his right to counsel at the guilty plea by failing to advise him of the maximum and minimum sentence for each offense for a Range I offender, failing to ensure the Defendant was aware of the elements for each offense, and failing to establish a factual basis for each offense. In response, the State contends that at the arraignment the trial court advised the Defendant that he could have the assistance of counsel and tried multiple times to convince the Defendant to accept an attorney. The State also notes the trial court engaged the Defendant in a lengthy hearing on the issue, appointed multiple different attorneys as elbow counsel, and that the Defendant "just wasn't going to have it." The State further points out that the Defendant signed two written waivers of the right to counsel in case numbers 19-879 and 19-880, and verbally waived his right to counsel at the arraignment. Finally, the State asserts that during the guilty plea colloquy the trial court properly advised the Defendant of the maximum and minimum sentence for each offense for a Range I offender, the Defendant was aware of the elements for each offense based on the plea paperwork, and a detailed factual recitation in support of each offense was provided at the guilty plea hearing. Upon our review, we agree with the State.

Article I, section 9 of the Tennessee Constitution and the Sixth Amendment to the United States Constitution guarantee not only a right of the accused to be represented by counsel but also a right to self-representation. State v. Hester, 324 S.W.3d 1, 30 (Tenn.

2010) (citing State v. Small, 988 S.W.2d 671, 673 (Tenn. 1999)) (footnote omitted). These two rights—the right to counsel and of self-representation—are alternatives, with a defendant being able to assert one or the other but not both. Id. (citing Lovin v. State, 286 S.W.3d 275, 284 (Tenn. 2009); and Small, 988 S.W.2d at 673)). We must indulge every reasonable inference against a defendant's waiver of the right to counsel. Brewer v. Williams, 430 U.S. 387, 404 (1977). When an accused desires to proceed pro se, the trial judge must conduct an intensive inquiry as to his ability to represent himself, see State v. Northington, 667 S.W.2d 57, 61 (Tenn. 1984), and determine whether the waiver of the right to counsel is knowingly and intelligently made. State v. Armes, 673 S.W.2d 174, 177 (Tenn. Crim. App. 1984); Tenn. R. Crim. P. 44. In Johnson v. Zerbst, 304 U.S. 458, 465 (1938), the United States Supreme Court placed "the serious and weighty responsibility . . . of determining whether there is an intelligent and competent waiver" directly upon the trial judge. In Von Moltke v. Gillies, more specific guidelines were established:

> [A] judge must investigate as long and as thoroughly as the circumstances of the case before him demand. The fact that an accused may tell him that he is informed of his right to counsel and desires to waive this right does not automatically end the judge's responsibility. To be valid such waiver must be made with an apprehension of the nature of the charges, the statutory offenses included within them, the range of allowable punishments thereunder, possible defenses to the charges and circumstances in mitigation thereof, and all other facts essential to a broad understanding of the whole matter. A judge can make certain that an accused's professed waiver of counsel is understandingly and wisely made only from a penetrating and comprehensive examination of all the circumstances under which such a plea is tendered.

332 U.S. 708, 723-24 (1948).

The Sixth Amendment safeguards to an accused who faces incarceration the right to counsel at all critical stages of the criminal process. Iowa v. Tovar, 541 U.S. 77, 80-81 (2004) (distinguishing Faretta v. California, 422 U.S. 806 (1975) and addressing "the extent to which a trial [court], before accepting a guilty plea from an uncounseled defendant, must elaborate on the right to representation"). The entry of a guilty plea, whether to a misdemeanor or a felony charge, ranks as a "critical stage" at which the Sixth Amendment right to counsel adheres. Id. at 87. In the context of a guilty plea, the Sixth Amendment constitutional requirement is met when the trial court informs the accused of the nature of the charges against him, of his right to be counseled regarding his plea, and the range of allowable punishments attendant upon the entry of a guilty plea. Id. at 81. The Court explained:

We have not . . . prescribed any formula or script to be read to a defendant who states that he elects to proceed without counsel. The information a defendant must possess in order to make an intelligent election . . . will depend on a range of case-specific factors, including the defendant's education or sophistication, the complex or easily grasped nature of the charge, and the stage of the proceeding.

Id. at 88.

In Tennessee, Rule 44(a)-(b) of the Tennessee Rules of Criminal Procedure governs waiver of the right to counsel and imposes the following obligation on the trial court:

Every indigent defendant shall be entitled to have assigned counsel in all matters necessary to the defense and at every stage of the proceedings, unless the defendant waives counsel. Before accepting a waiver of counsel, the court shall: advise the accused in open court of the right to the aid of counsel at every stage of the proceedings; and determine whether there has been a competent and intelligent waiver of such right by inquiring into the background, experience, and conduct of the accused, and other appropriate matters. A waiver of counsel shall be in writing. An accepted waiver of counsel shall be in the record.

See also State v. Herrod, 754 S.W.2d 627, 630 (Tenn. Crim. App. 1988).

The determination of whether a defendant has exercised his or her right of self-representation and has concurrently waived his or her right to counsel is a mixed question of law and fact. Hester, 324 S.W.3d at 29-30. Tennessee appellate courts review "mixed questions of law and fact de novo, accompanied by a presumption that the trial court's findings of fact are correct." State v. Holmes, 302 S.W.3d 831, 837 (Tenn. 2010). An error in denying the exercise of the right to self-representation is a structural constitutional error not amenable to harmless error review and requires automatic reversal when it occurs. State v. Rodriguez, 254 S.W.3d 361, 371 (Tenn. 2008).

Based on our review of the record, we conclude that the Defendant's waiver of his right to counsel was voluntary and not coerced as the Defendant suggests. We further conclude that he made a knowing and intelligent waiver of his right to counsel. At the preliminary hearing, the Defendant asserted his right of self-representation, signed a written waiver to that effect, and served as defense counsel at the hearing. The preliminary hearing transcript reflects that the Defendant engaged in his own defense, challenged the State's witnesses, and was successful in dismissal of certain charges. Just weeks after his indictments, on June 17, 2019, the Defendant filed his first pro se motion seeking to dismiss

the proceedings and alleging, among other things, that the "pro-se defendant has asserted his rights as a sovereign citizen since incarceration on April 23, 2019[.]"

At the arraignment, the trial court advised the Defendant of the offenses and the penalties for each offense. After the Defendant agreed that he understood them, the trial court engaged the Defendant in an in-depth and intensive discussion regarding the Defendant's request to represent himself. The Defendant advised the trial court that he had written over fifty grievances, had attended two universities to study criminal law, had "beat over 70 felonies," was familiar with the Tennessee Rules of Evidence, and did not approve of the public defenders. The Defendant claimed to be "the best lawyer in Jackson, Tennessee," likened himself to Johnny Cochran, and intended to "make a mockery" of the district attorney. Despite the trial court twice strongly advising against self-representation, the Defendant insisted on waiving his right to counsel. Two written waivers of the right to counsel for case numbers 19-879 and 19-880 were signed by the Defendant and filed on November 5, 2019. Between the arraignment and the guilty plea hearing, the Defendant filed in excess of thirty substantive motions. The trial court addressed each of the Defendant's motions, some for which relief was granted and others for which relief was denied.

Even though not required, at the guilty plea hearing, the trial court inquired whether the Defendant continued to represent himself and the Defendant replied, "Yes, sir." See e.g. United States v. Fazzini, 871 F.2d 635, 643 (7th Cir. 1989) ("Once the defendant has knowingly and intelligently waived his right to counsel, only a substantial change in circumstances will require the [trial court] to inquire whether the defendant wishes to revoke his earlier waiver."). Upon being asked if he had reviewed the "Request for Acceptance of Plea of Guilty" and "Petition to Waive Trial by Jury and Waive Appeal," the Defendant again replied, "Yes." The trial court further asked if the Defendant reviewed the rights he would be giving up by entering the plea agreement and whether the Defendant had previously entered a guilty plea, and the Defendant again replied, "Yes." The Defendant agreed that he was familiar with the guilty plea process, had reviewed the terms of the plea agreement, and understood the consequences of entering the guilty pleas. He discussed the plea agreement with elbow counsel, did not have any questions about the guilty plea paperwork, and signed the guilty plea paperwork prior to entry of the guilty pleas.

The guilty plea paperwork outlined each of the offenses to which the Defendant plead guilty, the range of fines and sentences, and the sentence to be imposed pursuant to the plea agreement. Significantly, in regard to the Defendant's complaint that the plea agreement was invalid based on the trial court's statement that the four counts of aggravated assault would merge into a single count, the signed guilty plea paperwork reflects that the Defendant agreed to plead guilty to four separate counts of aggravated

assault, which was consistent with the indictment and the factual basis provided in support of the guilty pleas. As such, we agree with the State, and conclude that the trial court misspoke when he stated the four counts of aggravated assault would merge. See State v. Carlton, No. M2018-01474-CCA-R3-CD, 2019 WL 3814726, at \*6 (Tenn. Crim. App. Aug. 14, 2019) (concluding that "the entire record in this case, including the written plea agreement and the transcript from the plea submission hearing," made it "abundantly clear that the State merely misspoke at the plea submission hearing when it stated that the Defendant was entering a guilty plea to especially aggravated kidnapping in Count 2 rather than Count 1") (no perm. app. filed). We also note that elbow counsel was present and available to answer any questions by the Defendant during the guilty plea colloquy. The trial court also explained the range of punishment for a Range I offender for each of the offenses. At no point during the proceedings did the Defendant assert that he did not understand the charges or the range of punishment for the crimes for which he was entering guilty pleas. Finally, at the Defendant's motion to withdraw hearing, the Defendant did not assert any deficiencies in his own representation at the guilty plea hearing nor did he claim to be unaware of his right to be counseled prior to or at his arraignment and at his guilty plea proceedings.

Based upon the above facts and the record overall, we conclude the Defendant entered a knowing and voluntary waiver of his right to counsel. See e.g. Hayes v. State, 809 S.E.2d 832, 834-35 (Ga. Ct. App. 2018) (rejecting the defendant's claim that his decision to proceed pro se upon entry of guilty plea was invalid where prior to accepting the defendant's plea, the trial court inquired as to his examination of the guilty-plea form with the assistance of counsel; his discussion of the underlying facts and potential defenses with counsel; and his satisfaction with counsel's representation; defendant conferred with counsel during the guilty-plea hearing; defendant's attorney interjected questions when the trial court made inquiry into defendant's competency to enter into a guilty plea, and defendant answered in the affirmative when asked if his attorney was standing next to him); Hines v. State, 868 S.E.2d 387, 395 (S.C. Ct. App. 2021), reh'g denied (Feb. 24, 2022), cert. granted (Jan. 12, 2023) (denying post-conviction relief and rejecting defendant's claim that he did not knowingly and voluntarily waive his right to counsel with a full understanding of his rights and the consequences of self-representation where defendant argued he decided to plead guilty because his plea offer was about to expire and he was unable to hire another attorney). Accordingly, the Defendant is not entitled to relief.

The Defendant's remaining claims appear to raise a mix of jurisdictional and non-jurisdictional issues in an attempt to challenge the constitutionality of his guilty pleaded convictions. In Faretta, the United States Supreme Court stated:

[W]hatever else may or may not be open to him on appeal, a defendant who elects to represent himself cannot thereafter complain that the quality of his own defense amounted to a denial of "effective assistance of counsel."

422 U.S. at 835, n. 46. Indeed, a defendant who enters a knowing and voluntary waiver of the right to counsel faces a formidable challenge in questioning the quality of his representation on appeal. In any case, because the Defendant resolved his cases by guilty pleas he has waived all non-jurisdictional defects in the prosecution. This is so because:

[A] guilty plea represents a break in the chain of events which has preceded it in the criminal process. When a criminal defendant has solemnly admitted in open court that he is in fact guilty of the offense with which he is charged, he may not thereafter raise independent claims relating to the deprivation of constitutional rights that occurred prior to the entry of the guilty plea.

Tollett v. Henderson, 411 U.S. 258, 267 (1973). Thus, after the entry of an unconditional guilty plea, the defendant may challenge only the trial court's jurisdiction and the voluntary and intelligent character of the plea itself. United States v. Ferguson, 669 F.3d 756, 763 (6th Cir. 2012); Rigger v. State, 341 S.W.3d 299, 316 (Tenn. Crim. App. 2010) (recognizing that "a valid guilty plea 'constitutes an admission of all facts necessary to convict and waives all non-jurisdictional defects and constitutional irregularities which may have existed prior to the entry of the guilty plea.'") (quoting State v. Pettus, 986 S.W.2d 540, 542 (Tenn. 1999)).

The Defendant includes a laundry list of other claims which technically may be categorized as jurisdictional defects to the prosecution. These claims include a challenge to the General Sessions judge's jurisdiction over felony cases, a challenge to the trial court's subject matter and personal jurisdiction during the arraignment, a claim that because the District Attorney General never prosecuted the case and the Assistant District Attorney General who handled the case had not been appointed District Attorney General pro tempore there was no authority to enter into a plea agreement, and a claim that because the trial court failed to promptly rule on his motion to recuse, failed to provide him with copies of the indictment, and allowed a non-appointed Assistant District Attorney to return a superseding indictment, the trial court lacked jurisdiction to adjudicate the petition because the court filed a written order after the Defendant had already filed a notice of appeal. None of these claims warrant discussion, and we conclude that the Defendant is entitled to no relief.

**Voluntariness of Guilty Plea.** As we understand his claim, the Defendant contends the trial court erred in denying his motion to withdraw his guilty pleas because they were unknowing and involuntarily entered. The Defendant argues that he was not advised of

the consequences of the guilty pleas and that he believed he was pleading guilty to a "package deal to consist of one count of agg[ravated] assault" as stated by the trial judge during the plea hearing. Had he known he was pleading guilty to four separate counts of aggravated assault rather than a single count of aggravated assault the Defendant would not have entered the entire guilty plea. The Defendant also claims the trial court did not explain the consequences of breaching his plea agreement. Because the plea agreement required the Defendant to have no contact with the victims, the Defendant was unclear if that prohibited him from subpoenaing the records from the car rental company in Texas to prove that the car from case number 19-880 was in fact a rental at the time he was arrested. The Defendant believed he did not knowingly and voluntarily enter his guilty plea because he did not "understand the effects of the entire plea package[.]" In response, the State contends the Defendant entered knowing and voluntary guilty pleas in this case. Upon our review, we agree with the State.

This court reviews a trial court's decision regarding a motion to withdraw a guilty plea for an abuse of discretion. State v. Crowe, 168 S.W.3d 731, 740 (Tenn. 2005); State v. Turner, 919 S.W.2d 346, 355 (Tenn. Crim. App. 1995). "An abuse of discretion exists if the record lacks substantial evidence to support the trial court's conclusion." Crowe, 168 S.W.3d at 740 (citing Goosby v. State, 917 S.W.2d 700, 705 (Tenn. Crim. App. 1995)). "A defendant does not have a unilateral right to withdraw a plea." Crowe, 168 S.W.3d at 740 (citing State v. Mellon, 118 S.W.3d 340, 345 (Tenn. 2003)). Tennessee Rule of Criminal Procedure 32(f) governs the withdrawal of a guilty plea and provides:

Withdrawal of Guilty Plea.

(1) Before Sentence Imposed.—Before sentence is imposed, the court may grant a motion to withdraw a guilty plea *for any fair and just reason.*

(2) After Sentence But Before Judgment Final.—After sentence is imposed but before the judgment becomes final, the court may set aside the judgment of conviction and permit the defendant to withdraw the plea to *correct manifest injustice.*

Tenn. R. Crim. P. 32(f) (emphases added).

On February 12, 2020, the Defendant entered guilty pleas in cases 19-879, 19-880, 19-509, and 19-590. Two days later, on February 14, 2020, the Defendant penned a motion to withdraw his guilty pleas in all cases, claiming, among other things, that he "did not commit the crimes," he "was not aware [he] was signing for over 15 convictions," "the plea was entered under duress" because he had a one-day offer, that, if not taken, he would remain subject to the "inhumane treatment" of the Sheriff's Department, and he did not

"read the plea agreement nor initiate plea negotiations[.]" Defendant's judgments in all of the Defendant's cases were entered on February 20, 2020, and his motion to withdraw his pleas was filed on the same day. "As a general rule, a trial court's judgment becomes final thirty days after its entry unless a timely notice of appeal or a specified post-trial motion is filed." State v. Pendergrass, 937 S.W.2d 834, 837 (Tenn. 1996) (citing Tenn. R. App. P. 4(a) and (c); State v. Moore, 814 S.W.2d 381, 382 (Tenn. Crim. App. 1991)). Because the Defendant filed his motion to set aside his pleas after his sentence was imposed but before the judgments became final, the more demanding standard, "to correct manifest injustice," applies to our review of the trial court's denial of the motion. See Tenn. R. Crim. P. 32(f); Crowe, 168 S.W.3d at 741. "This standard is based 'upon practical considerations important to the proper administration of justice.'" Crowe, 168 S.W.3d at 741 (quoting Kadwell v. United States, 315 F.2d 667, 670 (9th Cir. 1963)). This court has outlined certain circumstances that warrant the withdrawal of a guilty plea under the manifest injustice standard:

> Although Rule 32(f) does not define "manifest injustice," courts have identified on a case-by-case basis circumstances that meet the manifest injustice standard necessary for withdrawal of a plea. See Turner, 919 S.W.2d at 355; [State v.] Evans, 265 Ga. 332, 454 S.E.2d [468,] 473 [(Ga. 1995)]. Withdrawal to correct manifest injustice is warranted where: (1) the plea "was entered through a misunderstanding as to its effect, or through fear and fraud, or where it was not made voluntarily"; (2) the prosecution failed to disclose exculpatory evidence as required by Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963), and this failure to disclose influenced the entry of the plea; (3) the plea was not knowingly, voluntarily, and understandingly entered; and (4) the defendant was denied the effective assistance of counsel in connection with the entry of the plea.

Crowe, 168 S.W.3d at 741-42 (internal footnotes omitted); accord State v. Virgil, 256 S.W.3d 235, 240 (Tenn. Crim. App. 2008). The defendant bears the burden of establishing that his or her plea should be withdrawn to correct manifest injustice. Turner, 919 S.W.2d at 355 (citation omitted).

When analyzing the validity of a guilty plea, we follow the federal landmark case of Boykin v. Alabama, 395 U.S. 238 (1969), and the Tennessee landmark case of State v. Mackey, 553 S.W.2d 337 (Tenn. 1977), superseded on other grounds by rule as stated in State v. Wilson, 31 S.W.3d 189, 193 (Tenn. 2000). In Boykin, the United States Supreme Court held that a trial court may not accept a guilty plea unless there is an affirmative showing that the guilty plea was "intelligent and voluntary." 395 U.S. at 242. When accepting a guilty plea, the trial court is responsible for "canvassing the matter with the accused to make sure he has a full understanding of what the plea connotes and of its

consequence." Id. at 244. In Mackey, the Tennessee Supreme Court held that "the record of acceptance of a defendant's plea of guilty must affirmatively demonstrate that his decision was both voluntary and knowledgeable, i.e., that he has been made aware of the significant consequences of such a plea; otherwise, it will not amount to an 'intentional abandonment of a known right.'" 553 S.W.2d at 340.

The Tennessee Supreme Court has emphasized that a plea is not voluntary if it is the result of "'[i]gnorance, incomprehension, coercion, terror, inducements, [or] subtle or blatant threats . . . ." Blankenship v. State, 858 S.W.2d 897, 904 (Tenn. 1993) (quoting Boykin, 395 U.S. at 242-43). A trial court must look at a number of circumstantial factors before determining whether a guilty plea is voluntary and intelligently made. Id. These factors include the following:

> [T]he relative intelligence of the defendant; the degree of his familiarity with criminal proceedings; whether he was represented by competent counsel and had the opportunity to confer with counsel about the options available to him; the extent of advice from counsel and the court concerning the charges against him; and the reasons for his decision to plead guilty, including a desire to avoid a greater penalty that might result from a jury trial.

Id. (citing Caudill v. Jago, 747 F.2d 1046, 1052 (6th Cir. 1984)).

The Defendant argues that his guilty pleas were not knowingly and voluntarily entered because he was unaware of the consequences of pleading guilty. The record belies this claim. As an initial matter, the Defendant raises various other grounds in support of this issue which are waived because they were not presented before the trial court at the motion to withdraw hearing. These issues include the trial court's alleged violation of Tennessee Rule of Criminal Procedure 11(a) by allowing the Defendant to plead guilty to Case Number 19-880 because that case included a co-defendant who failed to appear in court, and the trial court's alleged failure to comply with Tennessee Rules of Criminal Procedure 11(d) and (f) because the court did not find a factual basis for the plea. Waiver notwithstanding, we conclude that neither of these issues negated the knowing and voluntary nature of the Defendant's guilty pleas. The record shows the State provided a factual basis in support of each offense at the guilty plea hearing, and the Defendant agreed they were substantially correct. We further conclude that the trial court did not violate Rule 11(a) Tennessee Rule of Criminal Procedure.

In regard to his remaining grounds in support of this issue, the trial court provided extensive findings in support of its determination that the Defendant entered knowing and voluntary guilty pleas, and had thus failed to establish a manifest injustice. The court stated the Defendant "made a lot of comments about videos and statements and reports and

fingerprints, but [it] [didn't] see any of that stuff. . . . [I]t's just all talk. There's nothing of substance in any of it." The court noted that it had "tried multiple times to get [the Defendant] to accept an attorney who could get that information for him[,]" and appointed the Defendant three different attorneys to serve as elbow counsel. The court also found the Defendant was not credible based on his statement at the motion to withdraw hearing that "he's never handled a criminal case" when the Defendant had previously advised the court at the arraignment that he had handled over fifty grievances, attended two universities for criminal law, and beat over seventy felonies in the court of law. The court noted that the Defendant received a plea deal in exchange for leniency on other cases and declined to allow the Defendant to withdraw his guilty pleas "without any proof of what the manifest injustice is[.]" The court then emphasized that it thoroughly reviewed the guilty plea with Defendant, explained that he had a right to go forward with his not guilty plea, and acknowledged the Defendant's case had been ready for trial. The court determined that the Defendant's comments that he was unaware of the elements of the offenses "was his job as the lawyer." The court found that the Defendant's proof at the motion to withdraw hearing amounted to "buyer's remorse[.]"

The record fully supports the determination of the trial court. Because the Defendant has failed to establish the trial court abused its discretion, he is not entitled to relief. In another filing entitled "judicial cover letter," the Appellant states "enclosed is an omnibus motion addressing numerous issues under TRAP 13(B), TRAP 36, and Tenn. R. Crim. Proc. 52(b)." To the extent this motion is separate from the appellate brief and the rebuttal appellate brief, we incorporate the denial of the motion into our holding in this appeal.

## CONCLUSION

Based on the foregoing reasoning and authority, we conclude that the Defendant entered a knowing and voluntary waiver of his right to counsel prior to entry of his guilty pleaded convictions in this case. We further conclude that the Defendant failed to establish manifest injustice sufficient to require the withdrawal of his guilty pleas. Accordingly, the judgment of the trial court is affirmed.

_____
CAMILLE R. MCMULLEN, PRESIDING JUDGE